**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| *JUAN JOHNSON,* | } |
| | } |
| PLAINTIFF, | } |
| | } |
| VS. | } |
| | } |
| *REYNALDO GUEVARA, and the CITY OF CHICAGO,* | } |
| | } |
| DEFENDANTS. | } |

## COMPLAINT

Plaintiff, Juan Johnson, by his attorneys, Gardiner, Koch and Weisberg, and Daniel J. Stohr, complains against defendants, Reynaldo Guevara, and the City of Chicago, as follows.

### Introduction

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of plaintiff's rights as secured by the United States Constitution.

2. Specifically, as a result of the egregious police misconduct and abuse more fully described below, Plaintiff Juan Johnson was wrongfully convicted of a murder that he did not commit and sentenced to prison for 30 years. In all, plaintiff spent approximately 12 years in prison, after defendants secured plaintiff's conviction by unlawful means of violation of plaintiff's constitutional rights.

3. After asserting his innocence for many years without success, the Illinois appellate court finally reversed and remanded defendant's conviction. Upon retrial a jury acquitted plaintiff of all charges. Plaintiff was able to prove facts establishing both his innocence and the reprehensible pattern of police abuse and misconduct that gave rise to plaintiff's wrongful conviction.

**Jurisdiction and Venue**

4. This court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

5. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within this district. Pendent jurisdiction is invoked pursuant to 28 U.S.C. 1367(a).

**The Parties**

6. Plaintiff, Juan Johnson, was at all relevant times a citizen of the United States and a resident of Chicago, Cook County, Illinois.

7. Defendant, Reynaldo Guevara, was a gang crimes specialist and then a detective in the Chicago Police Department. The constitutional violations alleged herein were undertaken with the assistance of, and participation by, other Chicago Police Department employees, presently known and unknown.

8. Defendant City of Chicago is an Illinois Municipal Corporation, and was and is the employer of Defendant Guevara. The City of Chicago is responsible for the acts of defendant officer while employed by the City of Chicago and while acting within the scope of his employment.

**Background**

9. On September 9, 1989, approximately 200 to 250 people attended a birthday party at a Chicago night club, the Caguas Club, on west North Avenue in Chicago. Members of several different gangs attended the party, including Latin Eagles, Spanish Cobras and others. The party started at about 8:30 or 9:00 p.m.

10. Around 11:00 or 11:30 p.m., a fight inside the nightclub spilled onto North Avenue, just outside the Caguas nightclub. There were approximately a hundred people outside the Caguas Club on North Avenue, and several different fights occurring on the street.

11. As observed by the Appellate court in reversing the denial of plaintiff's post-conviction petition:

> "We believe that there were weaknesses in the State's case at trial. . . . . The State had only one eyewitness, [Juan] Michel, [a.k.a. Juan Delgado] who affirmatively stated he saw Juan and

3

> Henry beating the victim. Michel was a member of the rival gang that the victim belonged to, and he did not discuss the incident with the police until the next day. He testified he had discussed the murder with fellow gang members before he spoke to the police and identified defendants as the perpetrators.
>
> . . .
>
> In an affidavit attached to defendant's post-conviction petition, Michel identified the board the police retrieved as the board he saw Juan use on the victim. Post-trial testing of the that board did not reveal any trace of blood or hair, despite the fact that witnesses testified that the victim was so bloody and disfigured by the beating they could not recognize him.
>
> [A second witness, Edwin] Gomez said he saw someone who 'looked like' Juan hit the victim." *People v Henry and Juan Johnson*, 1-00-3795 and 1-00-3818 (cons.), p. 25.

12. Plaintiff Juan Johnson was arrested the next day by Defendant Guevara. As a direct and proximate result of the arrest, plaintiff was placed in a Chicago Police Department line-up and "identified" by Juan Michel and Edwin Gomez.

13. Juan Johnson was one of four defendants tried for the murder of Ricardo Fernandez on September 9, 1989. Ultimately, all four defendants were acquitted.

14. Following the appellate court's reversal of the denial of Juan Johnson's post-conviction petition, *Id.*, plaintiff was put on trial again for murder and acquitted by a jury in February, 2004.

15. At the second trial, Salvador Ortiz, a Latin Eagle gang member testified to the fight in the Caguas Club that spilled-out into the street. The next morning, Defendant Guevara came to Salvador Ortiz's house. Edwin Gomez and Samuel Perez also came to Mr. Ortiz's house. Later that afternoon, Mr. Ortiz met with about 10 to 15 other Caucasian Hispanics who were Latin Eagle street gang members at a parking lot on the corner of Kenneth and Armitage Streets in Chicago. Also present was Juan Michel (Juan Delgado) and Edwin Gomez. The Latin Eagle street gang members hang-around for an hour to an hour and a half, discussing what they had heard about the incident the night before. Samuel Perez and Defendant Guevara also arrived at parking lot. Defendant Guevara laid out photos on a car hood.

16. Later that day Salvador Ortiz was taken to a police station. Mr. Ortiz remained at the police station from 4:00 p.m. to 1:00 a.m. At the police station Salvador Ortiz was placed in

4

room with Juan Michael, Edwin Gomez, Armando Mendez, and Guillermo Vasquez. Defendant Guevara laid out photos on a table that Defendant Guevara had earlier shown Salvador Ortiz at the parking lot. Defendant Guevara then told Mr. Ortiz that there was going to be a line-up and to identify Plaintiff Juan Johnson as the person who beat the deceased with a board. Prior to that Mr. Ortiz never told Defendant Guevara that he had seen the fight involving the deceased, and in fact had not seen the fight involving the deceased. Salvador Ortiz then falsely identified Plaintiff Juan Johnson at the line-up as the person who beat Mr. Ortiz's friend with a four by four board.

17. Samuel Perez, a Spanish Cobra, testified at the second trial as to the fight in the Caguas Club that spilled-out into the street. The next afternoon Samuel went with several other gang members to the vicinity of Kostner and Armitage in Chicago, a hang-out for Latin Eagle gang members. Defendant Guevara arrived and put Samuel Perez in Defendant Guevara's car. Samuel Perez testified:

> "[Guevara] told me that he knows that the Cobras killed that Eagle. Which Cobra, he didn't care, but he preferred that it was this Cobra and he showed me a picture out of an album.
>
> Q. And did you recognize who this Cobra was?
>
> A. Yes,
>
> Q. And who was that Cobra?
>
> A. It was Juan Johnson.
>
> Q. Now, Mr. [Perez], what did you take that to mean?
>
> . . .
>
> A. . . . I took it as a threat. I took it to it was either going to be – I was going to get hooked up for that murder or Juan Johnson could get hooked up for that murder.
>
> Q. Why did you think that? . . .
>
> A. Well, [Guevara] had a reputation on the street of hooking people up." (*People v. Juan Johnson II*, Tr. 2/20/04, pp. 65-66.)

18. Defendant Guevara then took Samuel Perez to the police station and put him in a room with Latin Eagle gang members Juan Michel, Edwin Gomez and Sal Ortiz. On a table in the room were photographs of the defendants who were soon charged, including of Juan Johnson. Samuel Perez told "the Latin Eagles that these were the guys that were there. These are the guys you want." Id. at 75.

19. The City of Chicago, acting through Defendant Guevara and other unidentified Chicago Police Officers, framed plaintiff for a crime that he did not commit by coercing witnesses, withholding exculpatory evidence and fabricating evidence.

20. As a proximate and direct result of Defendant Guevara and other unknown Chicago Police Officers framing plaintiff by arresting plaintiff, making false claims and withholding exculpatory evidence, Plaintiff Juan Johnson was wrongfully convicted of murder, a crime that he did not commit.

21. Defendant Guevara has a history of fabricated false identifications and then suppressing evidence of such misconduct. Plaintiff has now learned of at least 12 Chicago Police Department of Professional Standards complaints against Defendant, with several suspensions against Defendant Guevara. There have also been repeated specific complaints in other cases and to the media of Detective Guevara fabricating identifications and concealing the wrongfully tainted identification procedures.

22. Before being acquitted last year, as a result of defendants' misconduct, Juan Johnson suffered greatly, including, being imprisoned in Stateville, having his child grow-up without him, and having his wife leave him while plaintiff was imprisoned.

23. Without the tainted evidence, quite simply, there was not enough evidence to convict. Other than the false identification fostered by Guevara, and other Chicago employees, there is no confession by defendant, and the physical evidence points, the board "murder weapon" is suggestive of innocence rather than guilt. Additionally, several neighbors of the crime scene, bystanders, friend of the victim, and co-defendant, all testified in subsequent proceedings as to plaintiff's innocence – and corroborative of plaintiff's claim that he was wrongfully framed by Defendant Guevara.

### Count I – 42 U.S.C. § 1983

### Due Process

24. Each of the paragraphs of this complaint is incorporated as if fully restated herein.

25. As described more fully above, Defendant Guevara, while acting under color of law and within the scope of his employment as police officers, deprived plaintiff of his constitutional right to a fair trial.

26. Defendant Guevara and other Chicago employees deliberately withheld exculpatory evidence, as well as provided false evidence, thereby misleading and misdirecting the state criminal prosecution of the plaintiff. To wit, Defendant Guevara and other Chicago police officers provided false allegations that were the basis of the criminal complaint, withheld exculpatory evidence throughout the proceedings, and fabricated inculpatory evidence that was the basis of the criminal prosecution. Absent this misconduct, the prosecution of plaintiff would not have been pursued.

27. Specifically, Defendant Guevara withheld information about the fact that he directed witnesses to pick plaintiff out of a lineup and otherwise tainted the witness identification procedure. Defendant Guevara and other Chicago employees further concealed these exculpatory facts from plaintiff and the criminal court, in violation of *Brady*. Moreover, plaintiff did not know that Defendant Guevara had directed witnesses to pick plaintiff out of a lineup and otherwise tainted the witness identification procedure.

28. Moreover, Defendant Guevara's and other Chicago police officers' suppressing of evidence of their custom in other cases of improperly suggesting to witnesses who to pick out of a lineup, and in other cases otherwise tainting witness identification procedures, also implicated plaintiff's due process rights as violating *Brady*

29. The misconduct of Defendant Guevara and other Chicago employees also resulted in the criminal conviction of plaintiff, thereby denying plaintiff his Constitutional right to a fair trial as is secured to plaintiff in the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

30. The misconduct of Defendant Guevara and other Chicago employees in suppressing the evidence that he had encouraged witnesses to pick plaintiff out of a lineup and otherwise

tainted the witness identification procedure further prejudiced plaintiff by continuing to deny plaintiff relief in post-conviction proceedings.

31. As a result of the violation of his constitutional right to a fair trial, plaintiff suffered injuries, including but not limited to emotional distress.

32. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiff's constitutional rights.

33. The misconduct in this count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner more fully described herein.

### Count II – 42 U.S.C. § 1983

### False Arrest

34. Each of the paragraphs of this complaint is incorporated as if fully restated herein.

35. Plaintiff was improperly seized without legitimate probable cause, to wit, plaintiff was denied liberty without justification in violation of the United States Constitution.

36. As a result of he above-described wrongful infringement of plaintiff's rights, plaintiff has suffered damages, including but not limited to substantial mental distress and anguish.

37. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

### Count III – § 1983

### *Monell* Claim against City of Chicago

38. Each of the paragraphs of this complaint is incorporated as if fully restated herein.

39. All of the constitutional violations described in this complaint were undertaken pursuant to the policy and practice of the City of Chicago, in the manner described more fully above in prior sections of this complaint, in that:

   a. As a matter of both policy and practice, the Chicago Police Department directly encouraged, and was thereby the moving force behind, the very type of constitutional violation at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

      The City of Chicago knowingly allowed Defendant Guevara along with other unidentified Chicago employees to engage in such misconduct which ultimately resulted in the wrongful conviction of Plaintiff.

b. As a matter of both policy and practice, the department facilitates the very type of constitutional violation at issue here by failing to adequately punish and discipline prior instances of misconduct, including "repeater" offenders who exhibits patterns of abuse and misconduct, thereby leading Chicago Police Department officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff.

c. Generally, as a matter of widespread practice so prevalent as to compromise municipal policy, Defendant Guevara and other unidentified Chicago violated the constitutional rights of citizens in a manner similar to that alleged by plaintiff on a frequent basis, all with the knowledge and acquiescence of supervisory and command personnel, yet the department makes findings of wrongdoing in a disproportionately small number of cases.

d. Generally, as a matter of widespread practice so prevalent as to compromise municipal policy, the department refuses to refer police officers for prosecution even when they commit crimes such that officers are encouraged to believe that they enjoy de facto immunity from criminal prosecution.

e. Plaintiff's injuries were also caused by the policies and practices on the part of the City of Chicago, by and through Defendant Guevara and other unidentified Chicago police officers, of suppressing exculpatory *Brady* materials and improperly refusing to create exculpatory *Brady* materials.

f. Plaintiff's injuries were also caused by the policies and practices of the systematic fabrication of evidence, including false identifications, and the preparation of false police reports, which were implemented by Defendant Guevara and other unidentified Chicago employees, all designed to encourage prosecutions and secure convictions regardless of actual guilt or innocence.

    g. Municipal policy makers and department supervisors are aware of, and condone and facilitate by their inaction, a code of silence in the Chicago Police Department, by which officers fail to report and otherwise lie about misconduct committed by other officers, such as the misconduct at issue in this case.

    h. The City of Chicago failed to timely act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite the actual knowledge of the same, thereby ratifying the unlawful practices and causing the types of injuries described herein.

40. The policies and practices described in the foregoing paragraphs were consciously approved at the highest policy making level for decisions involving the Chicago Police Department, and were a proximate cause of the injuries suffered here by plaintiff.

41. On the basis of the foregoing, the City of Chicago is liable to plaintiff for his injuries.

## Count IV – State Law Claim

## Malicious Prosecution

42. Each of the paragraphs of this complaint is incorporated as if fully restated herein.

43. Plaintiff was improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and the prosecution of defendant was finally terminated with a jury not guilty verdict in a manner indicative of innocence.

44. Defendant Officer Guevara accused plaintiff of criminal activity knowing those accusations to be without probable cause, and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

45. Statements by Defendant Officer Guevara regarding plaintiff's alleged culpability were made with knowledge that the statements were false and perjured. In so doing, Defendant Guevara fabricated evidence and withheld exculpatory information.

46. The misconduct described in this count was undertaken with malice, willfulness, and reckless disregard for the rights of defendant.

47. As a result of this misconduct, plaintiff has suffered, and continues to suffer, injuries, including pain and suffering.

## Count V – State Law Claim

### Outrageous Infliction of Emotional Distress

48. Each of the paragraphs of this complaint is incorporated as if fully restated herein.

49. The actions referred to above, were extreme and outrageous. Moreover, the extreme and outrageous nature of Defendant Guevara's actions further arose from his abusing his position as police officer which gave defendants actual and apparent authority over plaintiff and the power to effect plaintiff's interests.

50. Defendant Guevara, by his actions referred to above, thereby intended to cause severe emotional distress or recklessly disregarded the probability of emotional distress to plaintiff.

51. The misconduct described in this count was undertaken with malice, willfulness, and reckless disregard for the rights of defendant.

52. Defendant's outrageous conduct proximately caused plaintiff's severe emotional distress.

## Count VI – State Law Claim

### Respondent Superior

53. Each of the paragraphs of this complaint is incorporated as if restated fully herein.

54. In committing the acts alleged in the preceding paragraphs, Defendant Guevara was a member of, and agent of, the Chicago Police Department, acting at all relevant times within the scope of his employment.

55. Defendant is liable as principal for all torts committed by its agent.

### Count VII – State Law Claim

### Indemnification

56. Each of the paragraphs of this complaint is incorporated as if restated fully herein.

57. Illinois law, (745 ILCS 10/9-102), provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

58. The defendant officer Guevara is and was an employee of the Chicago Police Department, who acted within the scope of his employment in committing the misconduct described herein.

**WHEREFORE**, plaintiff, Juan Johnson, respectfully requests that this court enter judgment in his favor and against defendants, Reynaldo Guevara, and the City of Chicago, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against Defendant Reynaldo Guevara, in his individual capacity, as well as any other relief for plaintiff that this court deems just and appropriate.

### Jury Demand

Plaintiff, Juan Johnson, demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

_____
Thomas Gardiner
Gardiner, Koch & Weisberg
53 W. Jackson Blvd., Suite 950
Chicago, IL  60604
312-362-0000

_____
Daniel J. Stohr
222 North LaSalle Street, Suite 200
Chicago, Illinois 60601
312-726-1180

Attorneys for Plaintiff