IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JUAN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 05 C 1042 |
| | ) | |
| REYNALDO GUEVARA, and the CITY | ) | Judge Grady |
| OF CHICAGO, | ) | Magistrate Judge Mason |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION *IN LIMINE* NO. 2**

**MOTION TO BAR PLAINTIFF'S EYEWITNESS EXPERT SOLOMON FULERO**

Defendants City of Chicago and Reynaldo Guevara, by and through their attorneys, James G. Sotos and Christina S. White of James G. Sotos & Associates, Ltd., move this Honorable Court, *in limine,* to exclude the testimony of Plaintiff's eyewitness expert Solomon Fulero and in support state:

**INTRODUCTION**

Plaintiff's only legally-operative claim is that Guevara withheld information that Plaintiff was deliberately framed through egregious manipulation of eyewitnesses including: threatening witnesses to falsely identify Plaintiff; showing Plaintiff's photograph to witnesses prior to formal identification procedures; telling witnesses to select Plaintiff's picture from mugbooks; telling witnesses where Plaintiff would sit in a physical lineup; and telling witnesses what to say about Plaintiff's involvement in the murder of Ricardo Fernandez. (*See, e.g.,* Docket Number 77, Amd. Cmpl. at ¶¶ 16-18, 26-27.) In support of his claim, Plaintiff seeks to introduce testimony of "eyewitness expert" Solomon Fulero, Ph.D. J.D. (*See* Fulero report, Exhibit A.)

This Court should bar Dr. Fulero for the simple reason that his proposed testimony will not assist the trier of fact to understand the evidence or to determine a fact in evidence, as

required by FED. R. EVID 702 and *Daubert v. Merrrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). If jurors believe Plaintiff's witnesses, they will not need scientific, technical or other specialized knowledge to understand that such blatant misconduct falls below any acceptable standards. This common-sense conclusion is supported by well-settled case law as well as by Dr. Fulero's own testimony.

I. **Well-Settled Legal Standards Support Barring Eyewitness Experts Where Their Testimony Will Not Assist the Jury**

In *Daubert*, the Supreme Court established the approach a district court must take in determining the admissibility of expert scientific testimony under FED. R. EVID 702. The text of FED. R. EVID 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Focusing on the language of FED. R. EVID 702, the Supreme Court concluded that when faced with a proffer of expert scientific testimony, a district court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. The Seventh Circuit has interpreted *Daubert* as requiring a district court to conduct a two-step analysis when a party proffers expert scientific testimony:

> First, when faced with a proffer of expert scientific testimony, the district court must "consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation.' ". . . This step requires that the district court determine "whether the reasoning or methodology underlying the testimony is scientifically valid. . . . Second, the district court must "determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." . . . This second step requires that

2

> the district court consider whether the proposed scientific testimony fits the issue to which the expert is testifying . . . In other words, a district court may admit expert testimony *only* if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.

United States v. Hall, 165 F.3d 1095, 1101-02 (7th Cir. 1999) (internal citations omitted; emphasis in original). For purposes of this motion, Defendants challenge Dr. Fulero on the second step of the analysis, because his testimony does not "fit" the case and will not assist the trier of fact.

In *United States v. Carter*, 410 F.3d 942, 950 (7th Cir. 2005), the Seventh Circuit affirmed the trial court's exclusion of the proffered eyewitness expert testimony because it would not actually assist the jury. Noting a "long line of Seventh Circuit cases holding that district courts did not commit abuses of discretion by excluding expert testimony regarding the reliability of eyewitness identifications," the appellate court found that the district court:

> exercised discretion by evaluating the facts and circumstances of this particular case in light of our case law and, further, did not abuse its discretion in concluding that this case did not present "an unusual or compelling situation in which the aid of an expert witness is required."

(*Id.*) See also *United States v. Larkin*, 978 F.2d 964, 971 (7th Cir. 1992) ("expert testimony regarding the potential hazards of eyewitness identifications . . . will not aid the jury because it addresses an issue of which the jury already is generally aware" and is "well within the ken of most lay jurors"); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1125 (10th Cir. 2006) (jurors "are quite capable of using their common-sense and faculties of observation to determine the reliability of a witness's identification"); *United States v. Martin*, 391 F.3d 949, 954 (8th Cir. 2005) ("the general reliability of eyewitness identification is a matter of common understanding"); *United States v. Harris*, 995 F.2d 532, 535 (4th Cir. 1993) ("jurors using

3

common sense and their faculties of observation can judge the credibility of an eyewitness identification").[1]

## II. Eyewitness Experts Like Dr. Fulero Are Occasionally Useful in Assessing the Reliability of an Eyewitness Identification, but Are of No Value in Assessing the Presence or Absence of Police Misconduct

The Seventh Circuit has recognized that "expert testimony regarding eyewitness identification, memory and perception is not per se unhelpful." *United States v. Welch*, 368 F.3d 970, 975 (7th Cir. 2004) (affirming district court's exclusion of unhelpful eyewitness expert testimony). Nonetheless, the cases in which eyewitness expert testimony is allowed are typically criminal cases in which the defendant seeks to suppress or cast doubt on an eyewitness identification; as stated by the Indiana Supreme Court: "Cases that typically lend themselves to the admission of expert eyewitness identification testimony generally involve a single eyewitness and identification is the primary issue at trial." *Cook v. State of Indiana*, 734 N.E.2d 563, 571 (Ind. 2000); *see* Fulero deposition, Exhibit B, at 107 (case law usually discusses eyewitness experts in the criminal context where the eyewitness is the only evidence in the case).

Dr. Fulero testified in his deposition that "98 percent" of the cases he testifies in are criminal cases; "very typically my testimony is at the original criminal trial level of a criminal case." (*Id.* at 13, 32.) Moreover, Dr. Fulero admitted he has testified about eyewitness reliability at a deposition in civil cases such as this only "three or four times," and he does not think he has

---

[1] In *People v. Enis*, 564 N.E.2d 1155, 1163-65 (Ill. 1990), the Illinois Supreme Court specifically ruled that the trial court's exclusion of Dr. Fulero's proffered expert testimony was proper because it "would not have aided the trier of fact in reaching its conclusion." (*Id.* at 1164.) *See also Enis v. Schomig*, No. 01 C 4429, 2004 WL 22034320, at *8, 16 (N.D. Ill Sept. 29, 2004) (agreeing with the Illinois Supreme Court and nothing that the broader issue of witness reliability is "undoubtedly" common knowledge to most jurors).

4

"ever testified in civil court, federal civil court, as an expert." (*Id.* at 32, 37.) And in fact, Dr. Fulero's Rule 26 "case list" is comprised solely of criminal cases (Exhibit C); he does not list civil cases "because they're typically not relevant to the -- almost all the work that I do with regard to eyewitness stuff is in the criminal cases, not in the civil ones." (Exhibit B at 317.)[2]

The present case does not concern the reliability of any witness identification. To the contrary, Plaintiff contends the so-called eyewitnesses actually saw nothing, and that the identifications were the product of a reprehensible conspiracy between Guevara and Spanish Cobra member Samuel Perez to railroad Plaintiff. Specifically, Plaintiff alleges, primarily through the testimony of Perez and Salvador Ortiz (neither of whom, according to the Complaint and Perez's testimony, was actually an eyewitness), that he was deliberately framed through Guevara's blatant manipulation of them by: threatening witnesses to falsely identify Plaintiff; showing Plaintiff's photograph to witnesses prior to formal identification procedures; telling witnesses to select Plaintiff's picture from mugbooks; telling witnesses where Plaintiff would sit in a physical lineup, and telling the witnesses what to say about Plaintiff's involvement in the murder. (*See* Dkt 77, Amd. Cmpl. at ¶¶ 16-18, 26-27.) Guevara adamantly denies that he did any of those things. (*See* Dk 111, Guevara's Answers to Amd. Cmpl.) The issue in this case, therefore, is not whether the identification of Plaintiff was reliable, but rather whose version of the identification process the jury deems credible. Moreover, the egregious conduct Guevara is accused of – if a jury believes it occurred – is so plainly improper that a jury would not need (and

---

[2] Even in a very recent state court criminal case, Dr. Fulero's proffered testimony was barred because it would not assist the trier of fact to understand the evidence or to determine a fact in issue. *See,* March 5, 2009 Opinion and Order barring Dr. Fulero's testimony in *Michigan v. Pippen*, 08-55868 - FC (Muskegon County Circuit Court) (attached as Exhibit D).

5

would not be assisted by) scientific, technical, or other specialized knowledge in order to understand it.[3]

Although Dr. Fulero contends the jury needs him, his own deposition testimony shows otherwise. Contrary to the Seventh Circuit's holding in *Larkin, supra*, that expert testimony about eyewitness identifications addresses an issue "well within the ken of most lay jurors" (978 F.2d at 971), Dr. Fulero stated in his deposition that he is needed at trial to explain the reliability of eyewitness identification because "it's beyond the ken of the average layperson." (Exhibit B at 55.) However, Dr. Fulero also stated he has "rarely run across facts that are being alleged that are like this one, where if you take what the Plaintiff is saying here, it looks as though there's essentially an attempt to shortcut everything and just get right to the evidence and manufacture evidence." (*Id.* at 193.) Dr. Fulero further admits that he has "never seen conduct like this alleged" and cannot imagine any expert would say it was not misconduct "if you believe what was done here from the plaintiff's view." (*Id.* at 201.) [4]

---

[3] Furthermore, eyewitness expert testimony about the reliability of eyewitness identification and memory raises issues of unfair prejudice, confusion of the issues, and misleading the jury under FED. R. EVID 403, which is another reason this Court should bar Dr. Fulero. *See Daubert, supra*, 509 U.S. at 594-95 (discussing the interplay between Rule 403 and Rule 702 and recognizing that under Rule 403 a judge "exercises more control over experts than over lay witnesses"); *United States v.Hall, supra,* 165 F.3d at 1107 ("the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury – determining the credibility of witnesses"); *United States v. Smith*, 122 F.3d 1355, 1357 (11th Cir. 1997) (admitting expert testimony that a witness's confident demeanor does not translate into accuracy "in effect would permit the proponent's witness to comment on the weight and credibility of opponents' witnesses"); *United States v. Libby*, 461 F. Supp. 2d 3, 18 (D.D.C. 2006) ( barring expert's opinion about how memory works because it "may cause the jur[ors] to surrender their own common sense in weighing [the] testimony").

[4] Plaintiff's other disclosed expert, Joseph Stine, repeatedly admitted that jurors' "common sense" would allow them to understand that the kind of conduct Plaintiff alleges Guevara used to frame him would be improper. (*See* Defendants' Motion to Bar Plaintiff's Police Procedures Expert Joseph Stine, filed contemporaneously, at 3-4.)

Indeed, Defendants have not offered an expert to testify that Guevara's conduct was reasonable or appropriate under Plaintiff's version of the facts. To the contrary, Dr. Fulero admits he agrees with Defendants' expert's opinion that: "Assuming a jury believes Perez and Ortiz, it is wrong for a police officer to communicate in any manner an expectation to a witness to falsely identify someone as the perpetrator of a crime. It is a fundamental violation of due process standards and acceptable police practice under any circumstance." (*See* March 22, 2009 "Response to Report of Darrel W. Stephens," Exhibit E at 1; *see also* Exhibit B at 273.) Additionally, Dr. Fulero admits even a lay jury "might intuitively understand that you shouldn't tell people in advance, here's a picture of the guy you're going to see," and he also admits that "it certainly might be reasonable for someone who believes this set of facts to, you know, infer intent from procedures that look pretty blatant if they occurred." (Exhibit B at 123, 194.)

Finally, Dr. Fulero admits "yeah, in some sense, I don't think that the jury needs an eyewitness expert to tell them that if you threaten a witness, you know, that that's wrong." (*Id.* at 279; *see also, id.* at 105 ("I don't think experts are necessary in every single case that has an eyewitness identification"); *id.* at 244-45 (in this case "I suppose you could argue you don't need experts on either side and it's just a credibility issue"); *id.* at 269 (whether it is wrong to falsely accuse someone "would be outside of the realm of an eyewitness expert").

Despite all of these admissions, Dr. Fulero maintains his testimony is still needed; however, the reasons he offers in support are flawed. First, he speculates a jury might want to know "why" it is wrong to manufacture evidence in the manner Plaintiff alleges. (*See* Exhibit B at 270, 272, 276-77, 284; Exhibit E at 1.) But as explained above, that issue is admittedly "fundamental" and well within a jury's common sense understanding. Dr. Fulero similarly argues he can provide a "scientific sense" of why manufacturing evidence is a problem (Exhibit

7

B at 123); can explain "why that's a problem from the memory standpoint" (*id.* at 270); can help the jury understand "the reason why it's done psychologically" and "what the effect of the act is" (*id.* at 277); can talk to the jury "about the way memory works" (*id.* at 282); and can provide evidence "within the scientific realm" that the alleged manufacturing of evidence "is not a good idea, and here's why." (*Id.* at 293-94.) Again, however, fundamental and common sense propositions as to the impropriety of manufacturing evidence against a murder suspect in a criminal case do not need or depend upon any scientific explanation.

Dr. Fulero also argues his testimony is needed because "there are issues about, you know, general orders and practice and pattern and policies and so forth." (Exhibit B at 245.) But *Monell* claims are not at issue in this trial, and in any event Dr. Fulero's reports (Exhibits A and E) do not state any opinions directed to any such claims, as he admits. (*Id.* at 247.) Even more afield, Dr. Fulero speculates his testimony "might be relevant to damages" (*id.* at 292) "[b]ecause – well, the reason it could be is that the plaintiffs might want to argue that it – it's a really bad action, and here's why. So it would be relevant to why it was a really bad action in some sort of an attempt to convince the jury to award more damages in that phase." (*Id.* at 293.) Apart from any other flaws, however, this argument is based on the mistaken belief that a jury cannot distinguish a "bad action" from a "really bad action" without expert evidence from a "scientific realm." (*Id.*)

Dr. Fulero's deposition also establishes that if the jury disbelieves Plaintiff's witnesses and instead believes Guevara and his witnesses, then Dr. Fulero's expert testimony is also unnecessary. For instance, in discussing whether an officer's pointing to a picture and telling a witness that the photo is the person the witness is supposed to identify, Dr. Fulero stated "if none of this happened, then my talking about, you know, post-event information of this sort, you

8

know, it doesn't help the trier of fact." (*Id.* at 120-21.) He also admitted that "obviously, if he [Guevara] didn't say, this is the suspect, then all of the negative consequences that flow from that, you know, are not there." (*Id.* at 167.) Dr. Fulero also stated that if Plaintiff's allegations of what Guevara did are not true, and if Guevara's only actions were the failure to use various identification procedures such as "double blind, sequential, you know, instructions, and, you know, that sort of thing," then such conduct "might only rise to, you know, some sort of unintentional malpractice kind of deal." (*Id.* at 191.)[5]

### III. Those Civil Cases Which Have Allowed Eyewitness Experts Are Easily Distinguished

"The circumstances under which expert eyewitness identification testimony is permitted are fact sensitive and must be assessed on a case-by-case basis." *Cook, supra,* 734 N.E.2d at 570. As described above, eyewitness experts usually emerge in criminal cases; however, there are two published opinions from this District discussing federal civil rights cases in which an expert in eyewitness identification – Gary Wells – was allowed to testify, though under markedly different circumstances than this case, where the issue is simple and straightforward.

In *Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003), Dr. Wells's testimony centered upon the scientific likelihood that eyewitnesses who identified an innocent suspect in a lineup did so because of "chance error" or deliberate manipulation. (*Id.* at 305-06.) To explore that issue, the court found Wells was properly allowed to testify about the experiments he ran using pictures of Mr. Newsome (who had obtained a pardon based on innocence) and the assumed "real killer."

---

[5] Plaintiff has not and could not allege any such "unintentional malpractice" claim in this case. "Rather, a constitutional claim for damages arises in the identification context only if the officer conceals information tending to undercut the identification from prosecutors or the defense." *Manning v. Buchan,* 357 F. Supp. 2d 1036, 1043 (N.D. Ill. 2004).

9

(*Id.*) Here, however, Dr. Fulero performed no experiments that need explaining to the jury.[6] More significantly, the deliberate misconduct alleged here is so blatant, rare and fundamental (to use Dr. Fulero's words) that it does not involve the scientific complexities and less-straightforward "coaching" and "influence" which was the subject of Wells's testimony in *Newsome*.

Similarly, in *Manning v. Buchan*, 357 F. Supp. 2d 1036 (N.D. Ill. 2004), Dr. Wells was allowed to testify about an eyewitness's photo identification in a case presenting a far more complex set of circumstances. According to Manning, the eyewitness had seen the culprit six years earlier for only a few seconds and only in profile, and initially gave a description that did not match Mr. Manning; yet, she supposedly picked Manning's photograph out of a lineup including 15 men and was 100% certain that Manning was the man she had seen six years earlier. (Manning's Response to Motions in Limine, Exhibit F, at 10-11.) Dr. Wells's opinions (which were not challenged under FED. R. EVID. 702 as being unhelpful to the jury) proposed to discuss several scientific principles, such as: (1) the "weakness of [the witness's] memory" and her susceptibility to suggestion; (2) the "psychological phenomenon of 'post-event information'"; and (3) the extent to which "the suggestibility phenomenon extends not just to an identification itself, but also to the degree of certainty reported by the witness." (*Id.* at 15-16.) Under these circumstances, Dr. Wells was allowed to testify that photographic arrays shown to a witness were "highly suggestive," that the defendant "affirmatively encouraged or prompted" the witness to

---

[6] In fact, Dr. Fulero admits "there is no study I know about that looks at the effect of attempting to coerce a witness into an ID . . . The reason for that is that nobody would expect that such a thing would be – would be done. You know, it's not something that would be subject to test." (Exhibit B at 322.)

identify plaintiff, and that the witness's "susceptibility to suggestion" caused her to misidentify plaintiff. (*Manning*, 357 F. Supp. 2d at 1043-44.)

The alleged facts of the instant case are easily distinguished and stand in stark contrast to those presented in *Manning* – the allegations are that Guevara manufactured evidence and rigged the lineup in a number of blatant and coercive ways that far transcend the need for an expert to opine about issues such as "susceptibility to suggestion," "suggestive" photo arrays, "prompting," or "encouragement." And while Dr. Fulero's report states generic opinions about some of the same phenomena discuss by Wells in *Manning* (Exhibit A), those opinions are only loosely connected to the facts of this case and are clearly not needed to assist the jurors' common sense appreciation of the issues presented here.

## CONCLUSION

Although Dr. Fulero insists that jurors need a scientist to recognize blatant and fundamental misconduct when they see it, it is clear that his proposed expert testimony in this case should be barred based on the law, the facts, and his own admissions. If a jury believes Plaintiff's allegations, then scientific, technical or other specialized knowledge is not needed by, and will not assist, the jury under the circumstances presented in this case. And if the jury believes Defendants and their witnesses, then Dr. Fulero's testimony is simply irrelevant.

WHEREFORE, Defendants respectfully request this Honorable Court issue an order excluding the testimony of Plaintiff's proffered expert witness Solomon Fulero pursuant to FED. R. EVID. 702 and *Daubert v. Merrrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).


Dated: April 17, 2009  /s/**Christina S. White**
One of the Attorneys for Defendants
City of Chicago and Reynaldo Guevara

JAMES G. SOTOS
ELIZABETH A. EKL
CHRISTINA S. WHITE
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon Avenue, Suite 150
Itasca, IL 60143-3156
(630) 735-3300
(630) 773-0980 (fax)
Attorney No. 06288703
cwhite@jsotoslaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, under penalties of perjury pursuant to 28 U.S.C.A. § 1746, that she electronically filed a complete copy of the foregoing **Defendants' Motion *In Limine* to Bar Plaintiff's Eyewitness Expert Solomon Fulero** with the Clerk of the Court on **April 17, 2009** using the CM/ECF system, which will send notification of such filing to the following counsel of record:
See Attached Service List.

/s/**Christina S. White**
One of the Attorneys for Defendants
City of Chicago and Reynaldo Guevara

JAMES G. SOTOS
ELIZABETH A. EKL
CHRISTINA S. WHITE
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon Avenue, Suite 150
Itasca, IL 60143-3156
(630) 735-3300
(630) 773-0980 (fax)
Attorney No. 06288703
cwhite@jsotoslaw.com

**SERVICE LIST**
*Johnson v. Guevara, et al.,* 05 C 1042

*Counsel for Plaintiff Juan Johnson:*
Jon I. Loevy
Arthur R. Loevy
Elizabeth N. Mazur
Russell R Ainsworth
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, Illinois 60607
(312) 243-5900
Email: jon@loevy.com
loevy@loevylaw.com
elizabethm@loevy.com
russell@loevy.com

Thomas G. Gardiner
GARDINER KOCH & WEISBERG
53 West Jackson Boulevard
Suite 950
Chicago, IL 60604
(312) 362-0000
Email: tgardiner@gkw-law.com

Amanda C Antholt
SMITH, JOHNSON & ANTHOLT LLC
112 S. Sangamon Street, Suite 3F
3rd Floor
Chicago, IL 60607
(312) 432-0400
Email: amanda@lawsja.com

Daniel J. Stohr
222 North LaSalle Street
Suite 200
Chicago, IL 60601
(312) 726-1180
Email: djs7@sbcglobal.net

*Counsel for Defendant Reynaldo Guevara:*
Arlene Esther Martin
Geri Lynn Yanow
Joseph M. Polick
Kathryn M. Doi
CITY OF CHICAGO, DEPARTMENT OF LAW
30 North LaSalle Street
Suite 1400
Chicago, IL 60602
(312) 744-6949
Fax: 312.744.6566
Email: amartin@cityofchicago.org
glyanow@cityofchicago.org
jpolick@cityofchicago.org
kdoi@cityofchicago.org

*Counsel for City of Chicago:*
Mara Stacy Georges
J Ernest Mincy, III
Diane S. Cohen
CITY OF CHICAGO, DEPARTMENT OF LAW
30 North LaSalle Street
Suite 900
Chicago, IL 60602
(312) 744-9010
Email: mgeorges@cityofchicago.org
emincy@cityofchicago.org
dcohen@cityofchicago.org

14